1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID L. WOODARD,<br><br>    Plaintiff,<br><br>vs.<br><br>SUSAN DELPORTAS, W. GREGORY SHANABERGER, BRIAN WELCH, ARIZONA MANAGEMENT COMPANY, an Arizona Limited Liability; FORTITUDE ENTERTAINMENT GROUP, INC., an Arizona Corporation, FORTITUDE MERCHANDISE, INC., an Arizona Corporation, FORTITUDE MUSIC GROUP, LLC, an Arizona Limited Liability Company, FORTITUDE STUDIES, LA, LLC, an Arizona Limited Liability Company; FORTITUDE STUDIOS, PHOENIX, LLC, an Arizona Limited Liability Company, H2C HOLDINGS, INC., an Arizona Corporation, H2C INDUSTRIES, INDIA, LLC, an Arizona Limited Liability Company, H2C MANAGEMENT, LLC, an Arizona Limited Liability Company, INTEGRATED FOOD GROUP, LLC, an Arizona Limited Liability Company, ALASKA FAMILY BRANDS, LLC, an Arizona Limited Liability Company, ARIZONA CORN FED BEEF, LLC, an Arizona Limited Liability Company, GENERAL MEATS AND PROVISIONS, LLC, an Arizona Limited Liability Company, PERSONAL CHEF FOODS, LLC, an Arizona Limited Liability Company, PERSONAL CHEF | No. CV 08-1093-PHX-MHM<br><br>**ORDER** |

MARKETS, LLC, an Arizona Limited )
Liability Company, PERSONAL CHEF )
HOME DELIVERY, LLC, an Arizona )
Limited Liability Company, DRM )
LEASING, LLC, an Arizona Limited )
Liability Company, MORPHEN, LLC, an )
Arizona Limited Liability Company, and )
DEL SUNSHINE, LLC, a Delaware )
Limited Liability Company, )
                                                  Defendants. )

On June 11, 2008, David L. Woodard ("Plaintiff") filed a complaint against Susan Delaportas, W. Gregory Shanaberger, Brian Welch, Arizona Management Company, Fortitude Entertainment Group, Inc., Fortitude Merchandise, Inc., Fortitude Music Group, LLC, Fortitude Studios, LA, LLC, Fortitude Studios, Phoenix, LLC, H2C Holdings, Inc., H2C Industries, India, LLC, H2C Management, LLC, Integrated Food Group, LLC, Alaska Family Brands, LLC, Arizona Corn Fed Beef, LLC, General Meats and Provisions, LLC, Personal Chef Foods, LLC, Personal Chef Markets, LLC, Personal Chef Home Delivery, LLC, DRM Leasing, LLC, Morphen, LLC, and Del Sunshine, LLC ("Defendants"), asserting claims of fraud (Count I), civil conspiracy (Count II), fraudulent misrepresentation (Count III), and piercing corporate veil/alter ego (Count IV). (Complaint, Dkt. #1, pp. 13-18). Defendants failed to respond to the Complaint. On July 18, 2008, Default pursuant to Federal Rule of Civil Procedure 55(a) was entered against Defendants. (Dkt. #15). Plaintiff has moved for default judgment.

**I. BACKGROUND & PROCEDURAL HISTORY**

The instant case stems from judgments that were entered in Colorado State Court, and Colorado and Arizona Federal District Court. In 2002, Plaintiff successfully sued Steven Delaportas in the Boulder County District Court, State of Colorado. (Complaint, Dkt. #1, p. 1-3, Exhibits 2, 3, 4, 5, 6, 7). In 2003, Plaintiff similarly prevailed in a lawsuit against Delaportas in the United States District Court for the District of Colorado. (*Id*.).

- 2 -

After Plaintiff's collection efforts did not succeed in Colorado, Plaintiff sought to enforce the two judgments in the United States District Court for the District of Arizona. (Dkt. #12, p. 4-5).

The instant action arose out of an alleged conspiracy to defraud Plaintiff by Defendants who have aided Steven Delaportas in evading the prior judgements. (*Id*., p. 2-7). Plaintiff claims that three individual Defendants Susan Delaportas, W. Gregory Shanaberger ("Shanaberger") and Brian Welch ("Welch") were aware of Steven Delaportas's legal liabilities, including the fact that Steven Delaportas had an outstanding two million dollar judgment against him. (*Id*., p. 8).

Plaintiff alleges that in order to avoid collection of this judgment, Steven Delaportas was removed as a named member/manager or shareholder of all Defendant entities. (*Id*., p. 7). Plaintiff claims that Steven Delaportas' involvement in the entities did not, however, change after his removal from the corporate structure. (*Id*., p. 7). Plaintiff claims that the amendments of ownership, performed by Susan Delaportas, were fraudulently executed so that Steven Delaportas could retain actual control without subjecting the company to his civil liability. (*Id*., pp. 7-9). Deposition testimony of a former friend and business partner of Steven Delaportas, Richard Gilmore, supports Plaintiff's allegations. (Dkt. #21, Exhibit 8). Richard Gilmore testified under oath that a network of companies was established to be held primarily in the name of Susan Delaportas because of the significant judgment against Steven Delaportas. (*Id*.). Furthermore, Richard Gilmore stated that it was understood that none of the businesses in which Steven Delaportas was involved could use his name. (Dkt. #21, Exhibit 8; Complaint, Dkt. #1, p. 8).

The network of companies included Arizona Management Company, Fortitude Entertainment Group, Inc., Fortitude Merchandise, Inc., Fortitude Music Group, LLC, Fortitude Studios, LA, LLC, Fortitude Studios, Phoenix, LLC, H2C Holdings, Inc., H2C Industries, India, LLC, H2C Management, LLC, Integrated Food Group, LLC, Alaska

1  Family Brands, LLC, Arizona Corn Fed Beef, LLC, General Meats and Provisions, LLC,
2  Personal Chef Foods, LLC, Personal Chef Markets, LLC, Personal Chef Home Delivery,
3  LLC, DRM Leasing, LLC, Morphen, LLC, and Del Sunshine, LLC ("Corporate
4  Defendants").  (*Id*., p. 7). (*Id*., p. 7).  In most instances, Steven Delaportas' name was
5  replaced with the name of his mother, Susan Delaportas.  (*Id*., p. 7).

6  In addition, it is alleged that Welch conspired to hide assets rightfully belonging to
7  Steven Delaportas to prevent Plaintiff from collecting judgment.  (*Id*., p. 9).  Plaintiff
8  alleges that Welch made payments to Arizona Management Company or other entities
9  owned by Susan Delaportas by transferring monies from his personal accounts for services
10 performed by Steven Delaportas.  (*Id*., p. 9).  Payments made in this manner concealed
11 income earned by Steven Delaportas.  (*Id*.).  Bank transactions obtained from M&I Bank
12 in 2007 by subpoena, allegedly demonstrate that such payments were in fact made.  (Dkt.
13 #21, Exhibit 2).  Plaintiff also contends that the payments were made at the request of
14 Susan Delaportas and Shanaberger.  (Complaint, Dkt. #1, p. 9).

15 Upon discovering Defendants fraudulent conduct, Plaintiff filed a Complaint.  (Dkt.
16 #1).  Accordingly, on June 23, 2008, Plaintiff served Defendant Susan Delaportas and the
17 Delaportas Companies.  (Dkt. #21, Exhibit 1 (Affidavit of Service), Exhibit 2 (Affidavit of
18 Jeremy A. Sitcoff, at ¶ 4)).[1]  Defendants failed to file responsive pleadings.  As such, on
19 July 18, 2008, Plaintiff filed a motion for entry of default judgment, and the Clerk of the
20 Court entered default against Defendants pursuant to Federal Rule of Civil Procedure
21 55(a).  (Dkt. #15; Dkt. #16).

22 On August 13, 2008, Plaintiff's counsel received a telephone call from a person
23 identifying herself as an attorney representing Susan Delaportas and a certain number of

---

[1] On September 16, 2008, Defendants W. Gregory Shanaberger and Brian Welch submitted a Notice of Settlement. (Dkt. #20). On October 1, 2008, the Court granted Plaintiff's stipulation dismissing Defendants W. Gregory Shanaberger and Brian Welch without prejudice. (Dkt. #23).

- 4 -

the Delaportas Companies. (Dkt. #21, Exhibit 2, at ¶ 6). The person advised that she would be entering an appearance on behalf of Defendant Susan Delaportas. (*Id*.). However, to date, no attorney has entered an appearance on her behalf. (Dkt. #21).

Accordingly, Plaintiff requests that judgment be entered in his favor against Defendants for the amount of the Arizona Federal Court Judgment including post judgment interest ($1,804,470.50, plus 8% interest compounded annually), compensatory damages for injuries suffered both as a result of his inability to collect on his judgment and for the fraudulent and conspiratorial conduct engaged in by Defendants. Plaintiff also requests prejudgment interest, punitive damages, and attorneys fees and costs. (Dkt. #1, 21).

**II. DISCUSSION**

"Entry of default judgment is governed by FRCP 55 and is left to the trial court's sound discretion." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). After entry of default by the Clerk of the Court pursuant to FRCP 55(a), the Court may grant default judgment pursuant to FRCP 55(b)(2). See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986) (discussing the sequential two-step process under FRCP 55). Factors that a district court may consider in exercising its discretion include the following:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id., 782 F.2d at 1471-72. After default has been entered by the Clerk of the Court, the factual allegations of the complaint are taken as true, except for those allegations relating to damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). "A party seeking default judgment must state a claim upon which it may recover." See Philip Morris USA, 219 F.R.D. at 494, 501 (C.D. Cal. 2003). Furthermore, a plaintiff must prove all damages sought in the complaint. Philip Morris USA, 219 F.R.D. at 498;

1 Fed. R. Civ. P. 55 (b)(2) ("In determining damages, a court can rely on the declarations
2 submitted by the plaintiff.").

3     Plaintiff has satisfied the procedural requirements for default judgment against
4 Defendants.  Plaintiff (1) submitted an affidavit and application for entry of default on July
5 18, 2008, and September 24, 2008 (Dkt. #15, 21), and (2) caused the Clerk of the Court to
6 enter default against Defendants on July 21, 2008 (Dkt. #16).  Plaintiff does not request
7 relief that differs from or exceeds that prayed for in the Complaint.  Thus, the application
8 for default judgment complies with the Federal Rules of Civil Procedure.  Accordingly, the
9 Court need only analyze the Eitel factors to determine whether default judgement is
10 appropriate in this case.

11     In considering the Eitel factors, the Court takes all factual allegations in Plaintiff's
12 Complaint as true, except for those relating to damages.  Heidenthal, 826 F.2d at 917-18.
13 Under the first factor, Plaintiff would clearly be prejudiced if default judgment was not
14 granted because he would be without other recourse for recovery.  This action is the only
15 means Plaintiff has to establish Defendants liability for participating in fraudulent
16 activities which prevented him from collecting his judgement from Steven Delaportas.
17 Absent entry of a default judgment, Plaintiff will be deprived of a remedy.

18     As to the second factor, the Complaint sets forth with great specificity the nature of
19 the allegations leveled against Defendants. (Complaint, Dkt. #1, pp. 6-17).  Plaintiff
20 adequately pled his claims for relief in his Complaint, detailing the fraud that Defendants
21 engaged in to prevent him from collecting his judgment.  (*Id*.).  Plaintiff also provided
22 deposition testimony supporting his allegations. (Dkt. #21, Exhibit 8 at ¶ 17).  The
23 complaint is sufficient, both legally and factually; and as such, the Court finds that
24 Plaintiff has demonstrated the merits of the claims.

25     As for the third factor of the Eitel test, as Defendants failure to answer constitutes
26 an admission to the averments contained in the complaint under FRCP 8(d), the Court

27
28
- 6 -

1  must accept these allegations as true.  Accordingly, the first three Eitel factors favor entry
2  of default judgment against Defendants.

3  Pursuant to the fourth Eitel factor, the Court considers the amount of money at
4  stake in relation to the seriousness of Defendants' conduct.  Eitel, 782 F.2d at 1471-72.  In
5  support of his claims, Plaintiff submits an affidavit detailing the amount of the judgment
6  entered against Steven Delaportas, the amounts that have been recovered, the expenses
7  incurred by Plaintiff in relation to his collection efforts, and bank records of the Delaportas
8  Companies evidencing fraudulent conduct.  (Dkt. #21, Exhibit 2).  As such, the Court
9  finds that this factor favors granting default judgment against Defendants.

10  As to the fifth factor, upon entry of default, all well-pleaded facts in the complaint
11  are taken as true, except those relating to damages. TeleVideo Sys., Inc., 826 F.2d at 917-
12  18.  Here, Plaintiff filed a well-pleaded complaint alleging the facts necessary to establish
13  its claims.  Defendants have been given a great deal of time to answer Plaintiff's complaint
14  and deny any averments contained therein.  However, Defendants have failed to do so.
15  Essentially, no dispute has been raised regarding material averments of the complaint and
16  Plaintiff allegations are supported by sworn deposition testimony.  (Dkt. #21, Exhibit 8 at
17  ¶ 17).  Thus, this factor also favors the entry of default against Defendants.

18  The sixth Eitel factor considers the possibility that default resulted from excusable
19  neglect.  "Due process requires that all interested parties be given notice reasonably
20  calculated to apprise them of the pendency of the action and be afforded opportunity to
21  present their objections before a final judgment is rendered."  Castworld Products, Inc.,
22  219 F.R.D. at 500-01 (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306,
23  314 (1950)).  Here, Plaintiff's counsel was contacted on August 13, 2008, by an attorney
24  who advised that she would be entering an appearance on behalf of Defendant Susan
25  Delaportas, but no responsive pleadings or entries of appearance have been filed.  As such,
26  the possibility that default resulted from excusable neglect appears to be remote.
27  Accordingly, this factor favors granting default judgment against Defendants.
28

1    Finally, "the mere existence of Fed.R.Civ.P. 55(b) indicates that the seventh Eitel
2 factor is not alone dispositive." Philip Morris USA, 219 F.R.D. at 501 (citing Cal. Sec.
3 Cans., 238 F.Supp.2d at 1177). "Moreover, Defendant[s'] failure to answer [Plaintiff's]
4 Complaint makes a decision on the merits impractical, if not impossible. Under FRCP
5 55(a), termination of a case before hearing the merits is allowed whenever a defendant
6 fails to defend an action." Cal. Sec. Cans., 238 F.Supp.2d at 1177. This occurred in the
7 instant case because Defendants refusal to defend this action renders adjudication on the
8 merits before this Court impracticable. Thus, the seventh Eitel factor does not preclude
9 the Court from entering default judgment against Defendants. Accordingly, in light of the
10 Eitel factors as a whole, the Court finds that default judgment against Defendants is
11 appropriate.
12    However, "[i]n granting default judgment, a court can award only up to the amount
13 prayed for by a plaintiff in its complaint." Truong Giang Corp. V. Twinstar Tea Corp.,
14 2007 WL 1545173 at *13 (N.D.Cal. 2007). A demand for relief must be specific under
15 FRCP 8(a)(3), and a plaintiff must "prove up" the amount of damages he or she claims
16 when seeking default judgment. See Castworld Products, 219 F.R.D. at 501.
17 Nevertheless, a "[p]laintiff's burden in 'proving up' damages on a motion for default
18 judgment is relatively lenient. If proximate cause is properly alleged in the complaint, it is
19 admitted upon default. Injury is established and plaintiff need prove only that the
20 compensation sought relates to the damages that naturally flow from the injuries pled."
21 Castworld Products, 219 F.R.D. at 498 (citing Cripps v. Life Ins. Co. Of N. Am., 980 F.2d
22 1261, 1267 (9th Cir. 1992)).
23    In the instant case, Plaintiff seeks the amount of his judgment entered against
24 Steven Delaportas, $ 1,840,470.50, plus 8% interest to be compounded annually on his
25 judgment pursuant to 28 U.S.C. § 1961(a). (Motion For Default Judgment, Dkt. #21, p.
26 11). Plaintiff demands the same forms of relief in his complaint; as such, Plaintiff's
27 requested remedies do not differ from the relief prayed for in the complaint. (Complaint,
28

1  Dkt. #1, p. 17-18).  Plaintiff has submitted (1) an affidavit from, Jeremy A. Sitcoff,
2  Plaintiff's attorney, discussing the amount of the judgment entered against Steven
3  Delaportas, the amounts recovered, the expenses incurred by Plaintiff in relation to his
4  collection efforts, and the hundreds of thousands of dollars that have passed through the
5  Delaportas Companies that were formed for the purpose of frustrating Plaintiff's collection
6  efforts (Dkt. #21, Exhibit 2); (2) the judgments ordered by the State of Colorado in favor
7  of Plaintiff against Steven Delaportas (Dkt. #21, Exhibits 5,7); (3) deposition testimony
8  from a former member of Fortitude Entertainment Group supporting Plaintiff's allegation
9  that Defendants fraudulently concealed assets to prevent the collection of his judgment
10 (Dkt. #21, Exhibit 8).  After reviewing the affidavits and related exhibits, the Court finds
11 that Plaintiff's requested damages against Defendants are reasonably calculated and derive
12 from the injuries pled in Plaintiff's complaint.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Plaintiff's motion for default judgment against Defendants in the amount of $ 1,840,470.50, plus 8% interest to be compounded annually pursuant to 28 U.S.C. § 1961(a).  (Dkt. #21).

**IT IS FURTHER ORDERED** directing the Clerk of the Court enter judgment accordingly.

DATED this 24th day of November, 2008.

_____
Mary H. Murguia
United States District Judge

- 9 -